Kristina A. **DAHL**, Plaintiff,

v.

**HEM PHARMACEUTICALS CORP. in care of Prentice Hall Corp. Systems, Inc., f/k/a HEM Research, Inc. and HEM Pharmaceuticals, Inc., Defendant.**

No. 94 CIV 563 AGS.

United States District Court, S.D. New York.

Oct. 26, 1994.

Stein & Associates, P.C., New York City, for plaintiff.

Choate, Hall & Stewart, Boston, MA, for defendant.

## ORDER

SCHWARTZ, District Judge:

This is a diversity action that was removed by defendant from New York State Supreme Court. The Complaint alleges two causes of action arising out of plaintiff's participation in a medical clinical trial of an experimental pharmaceutical compound manufactured by defendant called Ampligen, which is used for the treatment of Chronic Fatigue Immune Dysfunction Syndrome ("CFIDS"). The first cause of action is for lack of informed consent; plaintiff alleges that defendant was aware of but, in violation of its duties and obligations, failed to disclose to plaintiff "the reasonable and foreseeable risks and perils involved in treatment with Ampligen, including, *inter alia,* the risks and perils as a result of treatment, followed by hiatus of treatment and subsequent re-administration of Ampligen." Complaint at ¶ 26. Plaintiff's second cause of action is for fraud. Specifically, plaintiff alleges that defendant made false representations that induced her to participate in the clinical trial of Ampligen.

Defendant, HEM Pharmaceuticals Corp. ("HEM"), moves pursuant to 28 U.S.C. § 1404(a) to transfer this action to the District of Nevada. On October 13, 1994, the Court held an oral argument with respect to HEM's motion (the "Oral Argument"). For the reasons set forth below, HEM's motion is granted.

## DISCUSSION

Section 1404(a) provides that:

[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

As a threshold matter, this Court must determine whether the proposed transferee jurisdiction is a proper forum for resolution of this dispute. This action initially could have been brought in Nevada. The clinical trial of Ampligen (the "AMP–502 clinical trial"), which HEM sponsored and in which plaintiff, Dr. Kristina A. Dahl ("Dahl"), participated, was conducted in Incline Village, Nevada. Consequently, HEM is amenable to personal jurisdiction in Nevada and venue is also appropriate in Nevada. *See Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.,* 774 F.Supp. 858, 868 (S.D.N.Y.1991); 28 U.S.C. § 1391(a), (c).

In determining whether a case should be transferred under § 1404(a), the Court considers the following factors:

(1) the place where the operative facts occurred; (2) the convenience to parties; (3) the convenience of witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interest of justice.

*Viacom Int'l,* 774 F.Supp. at 867–868 (citations omitted). Balancing these factors is left to the sound discretion of the District Court. *Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir.1989) ("The determination whether to grant a change of venue requires a balancing of conveniences which is left to

the sound discretion of the district court") (citations omitted).

The burden is on HEM to establish that there should be a change of forum. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2nd Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979) (citations omitted) ("There can be no doubt that the burden is on the defendant, when it is the moving party, to establish that there should be a change of forum"); *see also Milgrim Thomajan & Lee P.C. v. Nycal Corp.,* 775 F.Supp. 117, 122 (S.D.N.Y.1991) ("moving party must make a clear showing to justify the change of venue") (citations omitted).

HEM contends that upon consideration of the factors referred to above transfer is appropriate here. The thrust of HEM's argument is that this action should be dismissed because of the "pendency" of a related case in the District of Nevada (the "Nevada Action") and also because of the convenience of the parties and of the witnesses.

*The Interest of Justice and the Nevada Action*

The Nevada Action was commenced on or about October 2, 1991 by Dahl as well as others. That action, like the instant action, arises out of Dahl's (and the other plaintiffs') participation in the AMP–502 clinical trial in Incline Village, Nevada. According to the Second Amended Complaint in the Nevada Action, the Nevada plaintiffs allege causes of action for specific performance, breach of contract, intentional misrepresentation (fraud and deceit) and negligent misrepresentation.

The Nevada Action has been vigorously litigated for almost three years—there are at least four hundred sixty two (462) docket entries in that action. There can be no doubt that significant judicial resources have been expended in the Nevada Action. Significantly, the Nevada plaintiffs sought and obtained a preliminary injunction requiring HEM to continue to provide Ampligen (this order was appealed to and affirmed by the United States Court of Appeals for the Ninth Circuit). It is also significant that the Nevada District Court decided two summary judgment motions which, together, disposed of the Nevada Action. Dahl has appealed the second summary judgment order dated July

11, 1994 (the "Second Summary Judgment Order"). Finally, 25 depositions were conducted in connection with the Nevada Action.

Courts have frequently cited the desire to avoid multiplicity of litigation from a single transaction in considering whether an action should be transferred in the interest of justice. And cases have frequently been transferred to a forum in which other actions were pending from the same transactions. *See* 15 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3854 at 441–442 (1986 & Supp.1994); *see also Mfrs. Hanover Trust Co. v. Palmer Corp.,* 798 F.Supp. 161, 165 (S.D.N.Y.1992) (" 'There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.' ") (citations omitted). Further, "the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction." *Federal Practice and Procedure* § 3854 at 439–440.

Plaintiff suggests that since there is no longer an action pending in the Nevada District Court, transfer is not appropriate. Commentators have observed that the existence of a related case in the proposed transferee forum "need not be given weight if there is no realistic possibility of consolidating the present case with the related cases." *Federal Practice and Procedure* § 3854 at 454. In contrast, however, Judge Pollack has observed:

'To hold that the pendency of an action between the parties in another district could not be considered unless the action could be consolidated would unnecessarily limit the factors that should be considered in making a transfer determination ...'

*Berg v. First Am. Bankshares, Inc.,* 576 F.Supp. 1239, 1244 n. 1 (S.D.N.Y.1983) (quoting *A.J. Indus., Inc. v. United States Dist. Court for the Central Dist. of Cal.,* 503 F.2d 384, 389 (9th Cir.1974)). While *Berg* is factually distinguishable—among other things, in *Berg* pretrial discovery had concluded in the

action in the transferee district but the action in the transferee district was still pending and was not the subject of an appeal—Judge Pollack's reasoning nevertheless applies here. The Honorable Edward C. Reed, Jr. of the District of Nevada is intimately familiar with this action. Further, this action is not without certain factual complexities. Judge Reed's opinions, which have been provided to the Court, reflect a meticulous understanding of the facts and circumstances surrounding the AMP–502 clinical trial. It would be a patent misuse of judicial resources to require another Federal District Court (and perhaps another Court of Appeals) to review and become familiar with facts and circumstances already extensively excavated by another Federal District Court.

The parties vigorously dispute whether the Nevada Action and this action are sufficiently related to justify transfer. The Court observes that the issue is *not* whether identical causes of action have been pled in the two actions but whether they " 'hinge upon the same factual nuclei' ". *Berg,* 576 F.Supp. at 1243 (quoting *Durham Prods. v. Sterling Film Portfolio,* 537 F.Supp. 1241, 1244 (S.D.N.Y.1982)). The Court has examined the Complaint in this action, the Second Amended Complaint in the Nevada Action, Judge Reed's summary judgment orders, Judge Reed's order filed February 12, 1993 concerning a motion pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and HEM's Memorandum of Law dated November 6, 1992 with respect to the foregoing order and concludes that this action and the Nevada Action "hinge upon the same factual nuclei"; specifically, what was told to the participants in the AMP–502 clinical trial. The following passage from the Second Summary Judgment Order is instructive:

> Furthermore, there is no evidence that HEM failed to disclose to the plaintiffs that a hiatus in Ampligen treatment would cause severe and permanent medical damage because there is no evidence that such an [sic] hiatus effect exists. In fact, all the evidence submitted to this Court shows

that there is no scientific evidence in support of this hiatus theory. HEM had no way of knowing whether Ampligen was or was not effective in treating Chronic Fatigue Syndrome, much less whether an interruption in therapy would have any effect. In short, no reasonable trier of fact could possibly find for plaintiffs on their claim of negligence.

Second Summary Judgment Order at 9–10.[1]

*Convenience of the Parties and of the Witnesses*

Dahl, a physician, is a resident of New York State. Dahl has submitted a declaration on her own behalf stating

> "... it is difficult for me to travel without the use of oxygen. Not only is this expensive, but the effect of the trip renders me unable to function (i.e. get out of bed) for days, sometimes as long as two weeks. Thus, routine travel to Court in Nevada is out of the question."

Dahl Declaration dated April 1, 1994 at ¶ 5.

HEM maintains its principal place of business in Philadelphia, Pennsylvania and, according to HEM, does not do business in New York.

HEM argues that "[s]ince Ms. Dahl presumably plans to appear and testify at the trial of her case in Reno, it is hard to understand how a transfer of this action to that district could inconvenience her. HEM, on the other hand, would be substantially inconvenienced by having to appear and defend itself in cross-country trials of related claims." HEM's Memorandum of Law in Support of its Motion to Transfer ("Def.Mem.") at 5–6. HEM further argues that "[n]one of the non-party witnesses of which HEM is aware who will testify at the trial of this action reside in New York; many reside in Nevada." *Id.* at 6.

With respect to the convenience of the parties, HEM's argument that it would be subject to "cross-country trials" is moot in light of the Second Summary Judgment Or-

---

1. Finally, the Court need not, and specifically is not, deciding whether the claims alleged in this action were previously alleged in the Nevada Action. Further, the Court intends that this or-

der not impact the motion to dismiss the Complaint on res judicata and collateral estoppel grounds that defendant has indicated it intends to make.

der. While the Court is aware that a plaintiff's restricted ability to travel has been considered in denying a defendant's transfer motion (*see Turner v. Hudson Transit Lines, Inc.*, 724 F.Supp. 242, 244 (S.D.N.Y.1989)) as has plaintiff's financial condition (*see Austin v. Int'l Bhd. of Teamsters–Airline Div. 2747*, 739 F.Supp. 206, 208 (S.D.N.Y.1990)), the Court is not persuaded that plaintiff's disabilities or her financial condition here merit a denial of the transfer motion when the interest of justice clearly favors transfer. *Cf. Capitol Cabinet Corp. v. Interior Dynamics, Ltd.*, 541 F.Supp. 588 (S.D.N.Y.1982) (although balance of convenience did not favor transfer of breach of contract action, interest of justice required transfer where central figure could not be compelled to testify in Southern District of New York). Further, based on the present record, there is no reason to believe that Dahl would be unable to travel to Nevada for trial or that appearances in Nevada other than for trial would be required or would be excessive. Indeed, Dahl has recently relocated to New York from California. Moreover, the fact that Dahl has been prepared to litigate the Nevada Action in Nevada undermines the credibility of her argument that transferring this action to Nevada would be inconvenient. Thus, this factor neither favors Nevada nor New York as a forum.

With respect to the convenience of the witnesses, HEM's contentions in its motion papers are insufficient. The Second Circuit has unambiguously held that "[w]hen a party seeks the transfer on account of the convenience of witnesses under § 1404(a) he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors*, 579 F.2d at 218.

The Court has received no affidavits or declarations with respect to the identity or number of HEM's anticipated trial witnesses or a general statement concerning their testimony, whether they are party or non-party witnesses, where these witnesses are located and whether the non-party witnesses, if any, who are outside the Court's subpoena power will voluntarily consent to appear at trial.[2]

At Oral Argument the Court asked counsel for both parties who they anticipated calling as trial witnesses. Dr. Susan Levine, who is located in New York, treats Dahl and is also allegedly an expert on CFIDS, was mentioned by plaintiff's counsel for the first time. Defendant's counsel stated that HEM's witnesses would be located throughout the United States but the focus would be in Nevada and that the nurses and doctors who treated Dahl while she was participating in the AMP–502 clinical trial were located in Nevada. While the Court appreciates the information provided at the Oral Argument, and notes that it is significant that the doctors and nurses who were involved in Dahl's participation in the AMP–502 clinical trial are located in Nevada, the Court does not condone defendant's failure to submit the required information with respect to its anticipated trial witnesses. Therefore, the Court will not rely on the convenience of HEM's witnesses in deciding the motion.

*Plaintiff's Choice of Forum and the Place Where the Operative Facts Occurred*

There are no allegations in the Complaint or in any of the papers submitted by plaintiff that the events giving rise to this action have a material connection to New York. As a result, plaintiff's choice of forum is entitled to reduced significance. *See, e.g., Essex Crane Rental v. Vic Kirsch Const.*, 486 F.Supp. 529, 537 (S.D.N.Y.1980); *Foster v. Litton Indus., Inc.*, 431 F.Supp. 86, 87 (S.D.N.Y.1977). On the contrary, based on the current record many operative facts occurred in Nevada. These factors, therefore, favor transfer.

The Court has considered all of Dahl's other objections to defendant's motion and has determined that transfer is appropriate.

**2.** While HEM's affidavits do not list their proposed trial witnesses one declaration does state, "[n]one of the witnesses deposed [in the Nevada Action] by any party, with the exception of Ms. Dahl, are residents of New York. I am aware of no witness to any fact at issue in the Dahl Nevada Litigation or in the litigation now pending in this Court, other than Ms. Dahl, who is a resident of New York. Many such witnesses reside in or around Incline Village, Nevada." Declaration of Michael Arthur Walsh dated ("Walsh Declaration") February 7, 1994 at ¶ 4; *see also* Declaration of William A. Carter dated February 3, 1994 at ¶ 4 (similar to Walsh Declaration and also stating that Dahl's treating physician resides in Incline Village, Nevada).

*CONCLUSION*

For the reasons set forth above, in the interest of justice, HEM's motion to transfer this action to the District of Nevada is granted.

The Clerk of the Court is directed to transfer this action to the District of Nevada.

SO ORDERED.